746 So.2d 1194 (1999)
L.B. BRYAN & COMPANY, Alexander & Alexander, Inc., and Benefactor Financial Group, Inc., etc., Appellants,
v.
The SCHOOL BOARD OF BROWARD COUNTY, Florida, et al., Appellees.
No. 97-1527.
District Court of Appeal of Florida, First District.
December 14, 1999.
*1195 Paul R. Ezatoff and Christopher B. Lunny of Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Tallahassee, for Appellants.
Edward J. Marko, General Counsel; Robert Paul Vignola, Assistant General Counsel, The Office of the School Board Attorney, Fort Lauderdale, for Appellees The School Board of Broward County, Florida.
H. Richard Bisbee and John R. Dunphy of Blank, Rigsby & Meenan, P.A., Tallahassee, for Appellee Arthur J. Gallagher & Co. and United National Insurance Company.
VAN NORTWICK, J.
L.B. Bryan & Company, Alexander & Alexander, Inc., and Benefactor Financial Group, Inc. appeal a final order of the School Board of Broward County (hereafter, School Board), entered in a formal bid protest proceeding. By this final order, the School Board rejected the conclusions made by an administrative law judge (hereafter, ALJ) in a recommended order that the School Board acted illegally in awarding an insurance contract to Arthur J. Gallager & Company. For the reasons that follow, we affirm.
School boards are authorized by Florida statute to purchase insurance for the coverage of loss or liability, and insurance is to be purchased either by a process involving a bid or request for proposal (RFP) or by direct negotiation. Broward County sought RFPs from "properly licensed" insurance venders. Two proposals were submitted, one from Gallagher & Company, as agent for United National Insurance Company, and another from the appellants, in a joint venture comprised of L.B. Bryan & Company, Alexander & Alexander, Inc., and Benefactor Financial Group, as agents for Ranger Insurance. The appellants' proposal did not include coverage for the school board's athletic events, while Gallagher's proposal covered such events. The appellants sought to amend their proposal to include coverage for athletic events. Without allowing such amendment, the School Board found the Gallagher proposal to be in its best interests.
Upon learning of the School Board's intent to award the contract to Gallagher and United National Insurance, Ranger Insurance reported an alleged violation by United National of Florida's surplus lines law, chapter 626, Florida Statutes (1995), to officials in the surplus lines section of the Florida Department of Insurance. Generally speaking, section 624.401, Florida Statute (1995), requires that an insurer be "authorized" by the Department of Insurance to transact business in this state. One of the exceptions to that general requirement is found in section 626.915, Florida Statutes (1995), which provides that if certain coverages cannot be obtained in this state by an authorized insurer, then coverage may be obtained from "unauthorized insurers" subject to certain conditions, including the condition that the insurer is "an eligible surplus lines insurer under s. 626.917 or s. 626.919." Following receipt of several letters from Ranger alleging a violation, an official with the Florida Department of Insurance advised the School Board by letter that no violation of the surplus lines law occurred when Gallagher and United National provided a proposal to the School Board.
*1196 Appellants timely filed a formal written protest upon receiving notice from the School Board of its intent to contract with Gallagher for certain insurance coverage, including the excess general and automotive liability coverage, which included the athletic events coverage. The protest was turned over to the Division of Administrative Hearings for a hearing, and Gallagher was permitted to intervene.
Following a hearing, the administrative law judge (ALJ) found that Ranger's insurance proposal fell materially short of Gallagher's proposal, because Ranger did not provide coverage for athletic events. The ALJ further found, however, that the exclusion of coverage on athletic events was made by Ranger in error, and that Ranger had in fact intended to offer such coverage and so notified the School Board of that intent after the two proposals were evaluated. The ALJ's conclusions of law included the following in paragraphs 48 and 50:
48. Indeed, the School Board's award is illegal under section 926.913 et seq., the Surplus Lines Law. Distilled to its essence, the School Board made an award of Excess General and Auto Liability coverage to an unauthorized insurer, United National, when an authorized insurer, Ranger, had proposed coverage. Whether diligent effort had been made by the producing agent or not, (a condition necessary to make insurance coverage eligible for export under section 926.916, Florida Statutes,) surplus line insurance is authorized only if coverage cannot be procured from authorized insurers, section 926.915, Florida Statutes. In this case, it is quite plain that Ranger, an authorized insurer proposed coverage. If its proposal was responsive to the RFP, the coverage could not have been awarded to an eligible surplus lines insurer no matter how diligent the effort of the surplus lines insurer's producing agent to find an authorized insurer prior to submitting a proposal for an unauthorized insurer.
* * *
50. That Gallagher had performed diligently in attempting to obtain authorized insurers to offer coverage several months before the proposals were considered by the School Board, however, does not mean that Ranger's proposal should not have taken precedence over the Gallagher proposal. Once an authorized insurer had submitted a proposal, the School Board was duty-bound under the Surplus Lines Law to consider that proposal above any made by eligible surplus lines insurers. The proposal from Ranger should not have been rejected unless it was not responsive to the RFP and then only if negotiations could not make it responsive. If the Ranger proposal were found to be not responsive and negotiations failed to make it responsive, then and only then was the School Board free to reject the proposal and consider proposals from eligible surplus lines insurers.
In its final order, the School Board adopted all of the findings of fact made in the ALJ's recommended order, but rejected the ALJ's conclusions of law in paragraphs 48 and 50, finding both paragraphs "contrary to law."
Appellants argue on appeal that under the revised Florida Administrative Appeals Act, chapter 120, Florida Statutes (Supp. 1996), an agency such as the School Board can modify or reject an ALJ's conclusions of law only when the agency has "substantive jurisdiction" over the subject matter. The School Board of Broward County obviously lacks substantive jurisdiction over the Florida Insurance Code, and especially over those provisions of the code relating to surplus line coverage. Thus, argue the appellants, the School Board acted contrary to section 120.57(1)(j), Florida Statutes (Supp.1996), when it rejected paragraphs 48 and 50 of the recommended order, which address the Florida surplus lines law. Based upon our controlling case *1197 law, we cannot agree with appellants' reading of section 120.57(1)(j).
Section 120.57(1)(j), Florida Statutes (Supp.1996), provides:
The agency may adopt the recommended order as the final order of the agency. The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules over which it has substantive jurisdiction.
The question presented here is whether the phrase "over which it has substantive jurisdiction" modifies "conclusions of law" and "interpretation of administrative rules," or whether it modifies only "interpretation of administrative rules." Both sides to this appeal have cited for our consideration numerous rules of statutory construction and grammar, none of which are particularly persuasive.
We find Department of Children and Families v. Morman, 715 So.2d 1076, 1078 (Fla. 1st DCA 1998), controlling. In Morman, on an appeal by the Department of Children and Families, we vacated an order of an administrative law judge which had dismissed the Department's complaint based on an issue of law outside of the Department's substantive jurisdiction. Although the majority opinion in Morman did not expressly discuss section 120.57(1)(j), an interpretation of that statute was required to reach the holding in Morman, as is clear from the concurring and dissenting opinions in that case. In his concurring opinion, Judge Ervin discussed the interpretation of section 120.57(1)(j) underlying the majority opinion. As he explained, in amending section 120.57(1)(j) the legislature did not intend a "substantial and profound change to a statute that had remained unchanged for more than 20 years...." 715 So.2d at 1076 (Ervin, J., concurring). Judge Ervin concluded that by amending the statute, the legislature intended
to clarify that which had long been the law: that the agency could reject or modify an ALJ's interpretation of administrative rules over which it has substantive jurisdiction, but its power otherwise in respect to an ALJ's conclusions in a recommended order remains unaffected by the statutory change.
Id.
We are not unmindful of the fact that the legislature has again recently amended section 120.57(1) to provide:
The agency may adopt the recommended order as the final order of the agency. The agency in its final order may reject or modify the conclusions of law over which it has substantial jurisdiction and interpretation of administrative rules over which it has substantial jurisdiction.
Ch. 99-379, § 6, Laws of Fla. (Emphasis added). Thus, the legislature has stated its preference for a departure from the long-standing law of this state, effective June 18, 1999. Because the majority view in Morman controls the application of section 120.57(1)(j) in this case, however, we affirm the result reached below.
We are not required to reach the question of whether the school board correctly construed the law regarding surplus insurance lines, because that question is not squarely before us. Finally, we find without merit appellants' claim that the school board violated their due process rights when it rejected appellants' motion to recuse the school board attorney.
Accordingly, the cause is AFFIRMED.
BOOTH AND PADOVANO, JJ., CONCUR.